THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* RICHARD M. DALEY, State's Attorney of Cook County, Plaintiff-Appellant, v. DATACOM SYSTEMS CORPORATION *et al.*, Defendants-Appellees (Datacom Systems Corporation, Third-Party Plaintiff; The Department of Registration and Education *et al.*, Third–Party Defendants-Appellants).

First District (4th Division)   Nos. 87—0674, 87—0677 cons.

Opinion filed November 10, 1988.—Rehearing denied December 15, 1988.

Richard M. Daley, State's Attorney, of Chicago (Glenn Carr and Caroline O. Shoenberger, Assistant State's Attorney, of counsel), for the People.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Patricia Rosen and Bret Rappaport, Assistant Attorneys General, of Chicago, of counsel), for appellants Department of Registration and Education and Gary L. Clayton.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Lynn K. Mitchell, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Bridgman, and William Lynch Schaller, of counsel), for appellee Datacom Systems Corporation.

Thomas W. Kelty and Michael J. Luke, both of Pfeifer & Kelty, P.C., of Springfield, for *amicus curiae*.

JUSTICE McMORROW delivered the opinion of the court:
Richard M. Daley, State's Attorney of Cook County, Illinois (the State's Attorney), brought an action on behalf of the People of the State of Illinois against the City of Chicago (the City) and Datacom Systems Corporation (Datacom). The complaint challenged certain as-

pects of the City's parking ticket collection program, whereby the City contracted with Datacom to aid in the City's efforts to collect fines allegedly due the City for individuals' asserted violations of the City's parking ordinances. The pleading alleged facts purporting to show that Datacom's actions with respect to the City's program violated the Illinois Collection Agency Act (Ill. Rev. Stat. 1987, ch. 111, par. 2001 *et seq.*), the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*) and the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 311 *et seq.*). The complaint also alleged facts purporting to demonstrate in *quo warranto* that the actions of the City and Datacom with respect to the program exceeded their corporate authorities. (Ill. Rev. Stat. 1987, ch. 110, par. 18—101 *et seq.*) The trial court dismissed the State's Attorney's complaint against Datacom and the City for failure to state claims for which relief could be granted (Ill. Rev. Stat. 1987, ch. 110, par. 2—615(a)), and the State's Attorney appeals.

On the same day that the State's Attorney filed its complaint against Datacom and the City, the Illinois Department of Registration and Education (DRE) initiated an administrative action to suspend or revoke Datacom's debt collection agency license, charging Datacom with violations of the Illinois Collection Agency Act. Thereafter, in the lawsuit commenced by the State's Attorney, Datacom was granted leave to file a third-party action against the DRE in which Datacom requested a declaratory judgment that Datacom's activities under the City's program were not governed by the Collection Agency Act and a temporary and permanent injunction to bar the DRE's administrative action against Datacom. The DRE filed a motion to dismiss the third-party complaint. The trial court denied the DRE's motion to dismiss, entered a declaratory judgment that Datacom's activities do not fall within the scope of the Collection Agency Act, and permanently enjoined the DRE from any administrative action to suspend or revoke Datacom's debt collection agency license. The DRE appeals.

We hold that: (1) Datacom's activities pursuant to its contract with the City amount to the sale of debt collection services governed by the Illinois Collection Agency Act; (2) Datacom's provision of debt collection services pursuant to its contract with the City is governed by the Consumer Fraud Act and the Uniform Deceptive Trade Practices Act; (3) Datacom's debt collection activities as an independent contractor for the City do not fall within the acts' exemptions for actions of public officials; (4) the factual allegations of the State's Attorney's complaint are sufficient to state claims that the notices sent

by Datacom were misleading and thereby violated the acts; and (5) the State's Attorney's complaint is sufficient to state claims against Datacom and the City in *quo warranto.*

We recognize that the City's contract with Datacom to collect allegedly delinquent municipal parking ticket fines was instituted pursuant to lengthy study, and that the City's program was adopted to achieve the laudatory and important goals of collecting needed municipal revenues and improving perceived deficiencies in the City's parking ticket collection system. The City's power to employ agents or independent contractors to assist in its collection program is not challenged in this appeal. At issue in this case is, simply, the applicability of the Illinois Collection Agency Act, the Consumer Fraud Act, and the Uniform Deceptive Trade Practices Act to Datacom's activities pursuant to its contract with the City. We conclude that these acts do apply to Datacom's actions and that the City cannot enter into a contract with an independent contractor collection agency to collect municipal parking ticket fines, which are "debts" under the Illinois Collection Agency Act, and by said contract authorize the independent contractor collection agency's violations of the Collection Agency Act, the Consumer Fraud Act, and the Uniform Deceptive Trade Practices Act. Our determination that the acts are applicable does not negate the validity of a debt collection program, agreed to by a municipality and its agents or independent contractors, which is not violative of those acts.

Based upon our determinations, we find that the trial court should not have dismissed the Cook County State's Attorney's complaint for failure to state claims for which relief could be granted and should have dismissed Datacom's third-party complaint against the DRE. Accordingly, we reverse and remand.

BACKGROUND

The State's Attorney's complaint states the following with regard to the City's contract with Datacom to recover fines allegedly due from persons with outstanding parking tickets. When a person has allegedly violated the City's parking ordinance, the police department of the City serves the individual with a citation that is placed or tied on his motor vehicle. This citation states, *inter alia,* "Notice—this is a complaint for a parking violation." The issuance of this notice initiates a court case in the circuit court of Cook County against the owner of the vehicle corresponding to the number of the license plate listed on the citation. The citation contains a schedule of statutory minimum fines for various parking offenses, which the person can pay

by mail if he chooses to plead guilty to the alleged ordinance violation.

If the ticket holder does not either plead guilty and pay the scheduled fine, or appear in court to contest the citation, notices setting a second court date are sent to the ticket holder by the clerk of the circuit court. If the ticket holder does not pay the scheduled fine or attend the second court hearing, he is listed by the clerk of the circuit court as being delinquent in paying the fine. According to the State's Attorney's complaint, "[n]o judgment has ever been entered by a Judge of the Circuit Court of Cook County against persons who neither appear in court to contest the alleged parking violation nor plead guilty to the violation and paid the scheduled fine."

On January 30, 1985, Datacom and the City executed a contract pursuant to which Datacom agreed, according to the State's Attorney's complaint, to "perform all services necessary to attempt to effect collection of delinquent parking ticket fines where parking tickets were issued by the *** City prior to September 30, 1984. Under said contract *** Datacom would retain a percentage which ranges from 20% to 42% of monies collected."

According to the terms of the contract, Datacom agreed to "undertake through ethical and lawful means to effect collections of the delinquent parking tickets." To do so, Datacom agreed to mail notices to delinquent ticket holders. The City reserved the right to approve the text of all notices and information sent by Datacom. The contract provided that Datacom was an independent contractor in the performance of its duties and was not an agent of or joint venturer with the City. Under the contract, Datacom agreed to comply with all applicable provisions of Federal, State and city ordinances, with specific reference to license requirements and debt collection activities. Thereafter Datacom applied for and was issued a debt collection agency license by the DRE.

Between May 1985 and January 1986, Datacom sent notices to Illinois residents who allegedly were delinquent in paying parking fines to the City. These notices instructed the recipients to pay the "total amount due" stated therein. This total amount included a sum listed under "fines and penalties" plus an additional amount listed under the heading "court costs" or "mailing fees." The amount of the "fines and penalties" listed in the notices was higher than the fines listed on the recipient's original parking citations; these initial citations also had stated no amount due for "court costs" or "mailing fees." Neither the City nor Datacom filed a motion in the circuit court to amend the City's traffic complaint to request increased fees; no trial court entered an order increasing the requested payment; and no

court entered a judgment which would permit the recovery of "court costs" or "mailing fees."

The notices sent by Datacom carried the seal of the City, listed as return addressee the City's department of revenue, and directed inquiries to an address and telephone number that appeared to be the City's department of revenue. However, inquiries so channelled were actually received and handled by Datacom, and fines paid were actually received by Datacom. Also, although the notices directed that checks or money orders be made payable to the clerk of the circuit court, payments were deposited by Datacom in its accounts in the Seaway National Bank. Datacom's deposits of monies in the bank continued until approximately July 1, 1985; the funds were not remitted to the office of the clerk of the circuit court until mid-July 1985. Neither the Cook County circuit court clerk, nor any judge of Cook County circuit court, authorized Datacom to deposit these payments in Datacom's accounts with the bank, or any other accounts not authorized by the Clerk.

According to the State's Attorney's complaint, Datacom's notices were also forwarded to persons who had previously paid their parking fines, individuals who had not violated any City parking ordinance, and persons whose citations had been dismissed by court order.

On February 26, 1986, the State's Attorney filed a four-count complaint against Datacom and the City. Count I alleged that Datacom violated certain provisions of the Consumer Fraud Act, including, *inter alia*, numerous violations of the Collection Agency Act. In count II of the complaint, the State's Attorney alleged that Datacom's activities with respect to the City's parking ticket collection program violated various provisions of the Uniform Deceptive Trade Practices Act. In counts III and IV of the complaint, the State's Attorney alleged that the activities of the City and Datacom exceeded their corporate authorities. The complaint requested various forms of declaratory and equitable relief, including suspension or revocation of Datacom's debt collection agency license, as well as fines for violations of the several acts upon which the State's Attorney relied.

The City and Datacom filed a motion to dismiss the State's Attorney's complaint in its entirety for failure to state claims for which relief could be granted. Datacom also filed a motion for leave to file a third-party complaint against the DRE to bar the DRE from proceeding on its administrative complaint against Datacom. The trial court allowed Datacom's motion to file the third-party complaint, to which the DRE filed a motion to dismiss. Following a hearing wherein the parties argued their respective positions, the trial court entered an or-

der that dismissed the State's Attorney's complaint against Datacom and the City. The court also entered a permanent injunction against the DRE barring its administrative proceeding to suspend or revoke Datacom's debt collection agency license. The State's Attorney and the DRE appeal.

OPINION ·

I

The State's Attorney's complaint alleges that Datacom's actions in connection with its collection efforts for the City violate the Illinois Collection Agency Act and also constitute unfair practices under the Consumer Fraud and Deceptive Business Practices Act. Datacom's motion to dismiss responds that its activities are not subject to the provisions of the Illinois Collection Agency Act. Datacom argues that its actions are not subject to the provisions of the Collection Agency Act both with respect to the sufficiency of the State's Attorney's complaint and also in support of its own third-party action against the DRE. We disagree and hold that Datacom's activities under its City contract are governed by the Illinois Collection Agency Act.

■■ Datacom argues that its activities are not governed by the Illinois Collection Agency Act because its contract with the City only obligates it to provide data processing or clerical services rather than debt collection services. The Illinois Collection Agency Act states that a "corporation acts as a collection agency when *** it *** [e]ngages in the business of collection for others of any account, bill or other indebtedness." (Ill. Rev. Stat. 1987, ch. 111, par. 2006(a).) The State's Attorney's complaint alleges and the terms of Datacom's contract with the City plainly provide, that Datacom would, for a percentage fee, "undertake through ethical and lawful means to effect collections of the delinquent parking tickets." The contract further states that Datacom agreed to comply with all applicable provisions of Federal, State and city laws, including those regarding license requirements and debt collection activities. In light of Datacom's agreement that it would "effect collection of the delinquent parking tickets" for a fee, and that it would comply with applicable laws pertaining to debt collection activities, we conclude that the allegations in the State's Attorney's complaint are sufficient to establish, for the purpose of overcoming Datacom's motion to dismiss, that Datacom's activities amount to debt collection rather than simply data processing.

■ Datacom also asserts that its activities are exempted from the Illinois Collection Agency Act (Act) because that act expressly states

that it does not apply to actions of "[p]ublic officers and judicial officers acting under order of a court." (Ill. Rev. Stat. 1987, ch. 111, par. 2005(4).) Datacom argues that the City's collection of delinquent parking ticket fines constitutes the conduct of an exempted public officer; because the City's collection of these municipal fines is exempted from the Act, Datacom's activities, which are to be performed "at the direction of and to the satisfaction of the City" pursuant to its contract with the City, are also exempt.

However, the State's Attorney's complaint alleges, and Datacom's contract with the City explicitly provides, that Datacom's actions are those of an independent contractor for the City and that Datacom is not acting as an agent of or joint venturer with the City. The State's Attorney argues that because Datacom agreed to act as an independent contractor for the City, Datacom's actions pursuant to its contract with the City do not fall, as a matter of law, within the Collection Agency Act's exemption for acts of "public officers." Datacom does not dispute the State's Attorney's argument that as an independent contractor Datacom cannot benefit from the public officer exemption of the Act. In light of these circumstances, we find Datacom's reliance upon the Act's public officer exemption insufficient ground to affirm the trial court's dismissal of the State's Attorney's complaint. Whether Datacom is in fact an agent of the City, or an independent contractor, and the legal significance of said status under the Act may be determined upon evidentiary proof and legal argument upon remand.

■ Datacom further argues that the provisions of the Collection Agency Act are not applicable to its activities because municipal parking ticket fines are not "debts" under the Act. According to the terms of the Act, a collection agency is "any person, association, partnership or corporation who, for compensation, either contingent or otherwise, or for other valuable consideration, offers services to collect *an alleged debt.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 111, par. 2004.) It states that a "person, association, partnership or corporation acts as a collection agency when he or it *** [e]ngages in the business of collection for others of any account, bill or *other indebtedness.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 111, par. 2006(a).) Although the term "debt" is not defined in the Act, the Illinois legislature has recently indicated in the Illinois Vehicle Code that a "final determination of parking violation liability *** [assessing] any unpaid fine or penalty will constitute a debt due and owing the municipality." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—208.3(b)(5)(i); see also Ill. Rev. Stat. 1987, ch. 95½, par. 11—208.3(b)(5)(ii) (notice of final determina-

tion shall indicate that unpaid fine is "debt due and owing the municipality").) Because the Illinois Vehicle Code explicitly recognizes a municipal parking fine as a "debt," and the Illinois Collection Agency Act applies to the business of collecting "an alleged debt," we believe the Illinois legislature intended the term "alleged debt" under the Illinois Collection Agency Act to include the allegedly delinquent parking ticket fines which Datacom has agreed to attempt to collect in the instant case.

Datacom cites to various cases for the general proposition that a municipal fine is not a "debt" under Illinois law. (*People v. Dummer* (1916), 274 Ill. 637, 113 N.E. 934; *City of Chicago v. Thomas* (1968), 102 Ill. App. 2d 143, 243 N.E.2d 572; *Village of Park Forest v. Bragg* (1966), 74 Ill. App. 2d 87, 220 N.E.2d 61, *rev'd* (1967), 38 Ill. 2d 225, 230 N.E.2d 868; *Flynn v. City of Springfield* (1905), 120 Ill. App. 266.) In view of the Illinois legislature's specific recognition of a municipal parking ticket fine as a "debt due and owing the municipality," the decisions to which Datacom refers are not applicable to the case at bar.

■ Because Datacom's third-party complaint seeks a declaratory judgment that the City's municipal parking ticket fines are not "debts" under the Collection Agency Act, we consider the propriety of Datacom's third-party complaint at this juncture. In this regard we address the DRE's arguments that the trial court should have dismissed Datacom's third-party complaint. Section 2—406(b) of the Illinois Code of Civil Procedure (Code) permits a defendant, by third-party complaint, to "bring in as a defendant a person not a party to the action who is or may be liable to him or her for all or part of the plaintiff's claim against him or her." (Ill. Rev. Stat. 1987, ch. 110, par. 2—406(b).) The DRE does not question whether Datacom's third-party declaratory judgment action against it was permissible pursuant to section 2—406(b) of the Code, and we therefore do not reach the issue. We note that the trial court's inclusion of the third-party claim would have been appropriate under section 2—1006 of the Code, which allows a defendant to file a separate claim against a nonparty and seek consolidation of the two causes "as an aid to convenience, whenever it can be done without prejudice to a substantial right." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1006.) We find no reversible error in the trial court's discretionary decision to permit Datacom's filing of the third-party claim, since such procedure adhered in substance to the requirements of section 2—1006 of the Code.

■ However, we further find that the trial court should have dismissed Datacom's third-party complaint on its merits. The DRE ar-

gues for the first time on appeal that Datacom's third-party complaint should have been dismissed because the City's allegedly delinquent parking ticket fines are "debts" under the Collection Agency Act. Although the DRE's argument could be deemed waived upon review because it was not raised before the trial court, we note that the DRE's contention is solely a question of law and has been fully briefed and argued by Datacom, DRE, and the State's Attorney in this appeal. In light of these circumstances, we elect to consider the merits of the DRE's argument that Datacom's third-party complaint should have been dismissed because the municipal parking ticket fines are debts under the Collection Agency Act.

As discussed above, we determine that the municipal parking ticket fines are debts under the Collection Agency Act. Because Datacom's third-party complaint sought a declaratory judgment and permanent injunction on the sole premise that the parking ticket fines are not debts under the Collection Agency Act, and we have concluded that said fines are debts under that Act, we find that the trial court erred when it permanently enjoined administrative proceedings by the DRE against Datacom. We also hold that the trial court should have dismissed Datacom's third-party complaint against the DRE.

## II

■ Count I of the complaint charged Datacom with violation of the Consumer Fraud Act. Datacom contends that its actions do not violate the Consumer Fraud Act because that act regulates only activities in "trade or commerce" to protect "consumers." The Consumer Fraud Act defines the terms "trade" and "commerce" to include the "sale *** of any services *** directly or indirectly affecting the people of this State." (Ill. Rev. Stat. 1987, ch. 121½, par. 261(f).) The phrase "trade or commerce" is to be given a liberal construction so that the broad purposes of the Consumer Fraud Act might be achieved. (See, *e.g.*, *Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 284, 430 N.E.2d 1012; *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 88, 438 N.E.2d 924.) Cases from other jurisdictions have held that the provision of debt collection services constitutes the "sale" of a "service" affecting "trade or commerce" governed by consumer fraud regulations. See, *e.g.*, *State v. O'Neill Investigations, Inc.* (Ala. 1980), 609 P.2d 520; see generally Note, *The Illinois Collection Agency Act*, 1975 U. Ill. L.F. 441, 455-57.

Datacom does not address or challenge the general proposition that the provision of debt collection services is a "service" affecting

"trade or commerce" that is governed by the Consumer Fraud Act. Rather, Datacom argues that its mailing of notices to delinquent parking ticket holders is not the typical consumer transaction which the Consumer Fraud Act seeks to regulate. Thus Datacom's argument draws a distinction between the collection of consumer debts (such as debts arising from the purchase of goods for household use) and the collection of debts owed to a local government (such as fines arising from violations of municipal ordinances). Based upon this distinction between the collection of consumer debts and debts of a local government, Datacom asserts that only the collection of consumer debts falls within the purview of the Consumer Fraud Act. Datacom maintains that the collection of municipal debts, such as the collection of allegedly delinquent parking ticket fines at issue in the case at bar, is not governed by the Consumer Fraud Act.

In our view, Datacom's argument draws an invalid distinction between various types of debts. The Consumer Fraud Act's definition of "trade or commerce" does not differentiate between consumer debts and other classifications of debts for purposes of the Consumer Fraud Act's applicability. The appropriate inquiry is, simply, whether the City has purchased debt collection services from Datacom, and whether Datacom's provision of these services "directly or indirectly affect[s] the people of this State." (Ill. Rev. Stat. 1987, ch. 121½, par. 261(f).) Datacom's debt collection activities for the City, similar to debt collection services for any creditor from whom a consumer has purchased an item for household use, amount to the sale of a service that, as alleged in the State's Attorney's complaint, "directly or indirectly affects the people of this State." For these reasons we conclude that Datacom's debt collection activities are part of "trade or commerce" governed by the Consumer Fraud Act.

■ In count II of the complaint, the State's Attorney charged Datacom with violations of the Uniform Deceptive Trade Practices Act. Datacom argues that its actions are not governed by the Uniform Deceptive Trade Practices Act because that act is limited to deceptive conduct in connection with the sale of goods or services, and grants an injured competitor standing to sue a party who offers or misrepresents as his goods those of the injured competitor. Datacom's position represents an overly restrictive interpretation of that act. The Uniform Deceptive Trade Practices Act accords the right to injunctive relief to "[a] person likely to be damaged by a deceptive trade practice of another." (Ill. Rev. Stat. 1987, ch. 121½, par. 313.) Deceptive trade practices include, for example, "caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, ap-

proval or certification of goods or services," or "the affiliation, connection or association with or certification by another," or "any other conduct which similarly creates a likelihood of confusion or of misunderstanding." (Ill. Rev. Stat. 1987, ch. 121½, pars. 312(2), 312(3), 312(12).) In the case at bar, the State's Attorney alleges that recipients of Datacom's notices have been misled by Datacom's misrepresentations in the performance of its debt collection services for the City. We disagree with Datacom's position that these recipients are not "persons likely to be damaged by a deceptive trade practice" adopted by Datacom. (See *Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 101-02, 497 N.E.2d 433, *appeal denied* (1987), 113 Ill. 2d 573.) As a result we find Datacom's argument insufficient ground to warrant dismissal of the State's Attorney's claim under the Uniform Deceptive Trade Practices Act.

To support its position that its activities for the City do not constitute "trade or commerce" under the Consumer Fraud Act and Uniform Deceptive Trade Practices Act, Datacom relies upon *Chirikos v. Yellow Cab Co.* (1980), 87 Ill. App. 3d 569, 410 N.E.2d 61, and *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634. Both cases are distinguishable.

In *Chirikos*, plaintiff argued that taxicab companies licensed by the City of Chicago violated the Consumer Fraud Act when the companies allegedly submitted misleading and erroneous information to the city in order to obtain city adoption of an ordinance authorizing a taxicab fare increase. In affirming the trial court's dismissal of the claim, the appellate court reasoned that the taxicab companies' "deception was [not] practiced in connection with trade or commerce" because *inter alia* "there was no representation and no dealing whatsoever between plaintiff and [the taxicab companies]. No representations or misrepresentations at the time plaintiff entered a taxicab or paid his fare are alleged in the amended complaint." (87 Ill. App. 3d at 578, 410 N.E.2d at 67-68.) In contrast to *Chirikos*, the case at bar is founded on alleged misrepresentations made by Datacom to recipients of the notices regarding allegedly delinquent parking ticket fines. *Chirikos* is therefore inapplicable to the instant case.

The case of *Steinberg v. Chicago Medical School* is also distinguishable. In that decision, plaintiff alleged that a medical school violated the Consumer Fraud Act and the Uniform Deceptive Trade Practices Act because the school used nonacademic criteria to reject plaintiff's application for admission. The supreme court determined that the trial court properly found that pleading insufficient to state claims for which relief could be granted. To support this conclusion,

the supreme court simply observed that the Consumer Fraud Act was inapplicable because plaintiff was not a "consumer" who had purchased merchandise and that the Uniform Deceptive Trade Practices Act did not apply since it "is limited to goods or services [and therefore] is not relevant." 69 Ill. 2d at 328, 371 N.E.2d at 638.

"However, the issue before the court [in *Steinberg*] was the right of a private person to sue under the Act, not the right of the [State's Attorney] to investigate or the scope of the Act's regulation. The court held that the Act did not provide a remedy for persons in Steinberg's position, because he, as an applicant, was not a 'consumer'—that is, he was not a *purchaser* of educational services." (Emphasis in original.) (*Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 285, 430 N.E.2d 1012, 1015.) "Thus, it appears that while the definition of consumer as set out in [the Act] may be pertinent for determining whether a plaintiff has standing, it is not a question of importance in a case, like the present case, which has been brought by the Attorney General's [or State's Attorney's] Office. [Citations.]" (*People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 88, 438 N.E.2d 924, 928.) *Steinberg* is therefore not controlling in the case at bar.

■ Datacom also contends that its activities are covered by the exemptions of the Consumer Fraud Act and the Uniform Deceptive Trade Practices Act. The Consumer Fraud Act provides that it is inapplicable to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State." (Ill. Rev. Stat. 1987, ch. 121½, par. 270b(1).) The Uniform Deceptive Trade Practices Act similarly exempts "conduct in compliance with the orders or rules of or a statute administered by a Federal, state or local governmental agency." Ill. Rev. Stat. 1985, ch. 121½, par. 314(1).

To support its position, Datacom again cites to *Chirikos v. Yellow Cab Co.* (1980), 87 Ill. App. 3d 569, 410 N.E.2d 61. The *Chirikos* decision is distinguishable from the instant case. In *Chirikos*, the Consumer Fraud Act's exemption was held to apply because public officers in the discharge of their lawful authorities had acted in reliance upon misrepresentations made by private parties.

In the case at bar, however, the debt collection activities of which the State's Attorney complains are not alleged to have been undertaken by the City in reliance upon misrepresentations made by Datacom. Rather, the State's Attorney's complaint alleges that Datacom has made misrepresentations to recipients of Datacom's notices. The State's Attorney's pleading further alleges that Datacom has made

these misrepresentations in Datacom's capacity as an independent contractor providing debt collection services to the City, and Datacom has made no argument to the effect that an independent contractor debt collection agency may benefit from the exemptions stated in the acts upon which Datacom relies. Under these circumstances, we find Datacom's citation to the public official exemptions of the Consumer Fraud Act and the Uniform Deceptive Trade Practices Act inadequate basis to affirm the trial court's dismissal of the State's Attorney's complaint. See *Richardson v. Baker* (S.D.N.Y. 1987), 663 F. Supp. 651; *cf. Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 392 N.E.2d 154; Note, *The Illinois Collection Agency Act,* 1975 U. Ill. L.F. 441, 447 n.34.

■ We further determine that the State's Attorney's complaint is sufficient to state a claim that Datacom's notices employ deception, fraud, false pretense, misrepresentation, or the concealment of a material fact to those persons who received Datacom's notices and therefore may violate the Consumer Fraud Act and the Uniform Deceptive Trade Practices Act. (See *People ex rel. Hartigan v. Stianos* (1985), 131 Ill. App. 3d 575, 581, 475 N.E.2d 1024 (collection of excessive sales tax held unfair and deceptive); *Floersheim v. Federal Trade Comm'n* (9th Cir. 1969), 411 F.2d 874, 878 (misleading address to indicate debt collection notices derived from government source held unfair and deceptive); see also *State v. O'Neill Investigations, Inc.* (Ala. 1980), 609 P.2d 520, 534; *Richardson v. Baker* (S.D.N.Y. 1987), 663 F. Supp. 651 (improper debt collection activities violate consumer fraud regulations).) Because the issue is not briefed by the parties herein, we need not and do not address the question of whether a violation of the Collection Agency Act is a *per se* violation of the consumer Fraud Act. See Note, *The Illinois Collection Agency Act,* 1975 U. Ill. L.F. 441.

With respect to whether the notices are misleading under the acts, Datacom urges that this court should follow the rulings of the Seventh Circuit Court of Appeals in *Horn v. City of Chicago* (7th Cir. September 21, 1988), Nos. 87—1174, 87—1175, 87—1209, 87—1936, and the circuit court of Cook County in *Stelzik v. City of Chicago* (January 21, 1986), No. 85—CH—7631 (memorandum opinion). However, "[t]he central question in [these actions was] whether plaintiffs were afforded the pre-deprivation process required by the United States Constitution." (*Horn,* slip op. at 8.) Because both of these decisions pertained to whether the demand notices provided sufficient notice to satisfy procedural due process, they are not apposite to the instant cause.

■■■ We note that Datacom contends on appeal that the State's Attorney's complaint was properly dismissed with prejudice because the State's Attorney is laboring under a conflict of interest. (See generally Ill. Rev. Stat. 1985, ch. 14, par. 6; *Environmental Protection Agency v. Pollution Control Board* (1977), 69 Ill. 2d 394, 372 N.E.2d 50; *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 359 N.E.2d 149; *People ex rel. Courtney v. Ashton* (1934), 358 Ill. 146, 192 N.E. 820; *People ex rel. Livers v. Hanson* (1919), 290 Ill. 370, 125 N.E. 268; 1975 Ill. Att'y Gen. Op. 143.) In this regard Datacom asserts that the State's Attorney has adopted inconsistent positions in two other lawsuits. (*Horn v. City of Chicago* (N.D. Ill. December 29, 1986), No. 85—C—6838 (amended memorandum opinion), *rev'd* (7th Cir. September 21, 1988), Nos. 87—1174, 87—1175, 87—1209, 87—1936; Stelzik v. City of Chicago (January 21, 1986), No. 85—CH—7631 (memorandum opinion).) Datacom argues that on this basis, the trial court's ruling on the motion to dismiss should be affirmed.

However, Datacom did not raise this contention in its motion to dismiss the complaint, nor did Datacom present a motion to disqualify the State's Attorney on the basis of an alleged conflict of interest. Since the trial court made no ruling either with respect to the State's Attorney's disqualification, or on whether the State's Attorney is laboring under a conflict of interest, the question is not properly presented for review, and we do not consider the issue here. Also, in none of the cases cited by Datacom was a State's Attorney's conflict of interest deemed sufficient basis to dismiss the cause with prejudice, as was done by the trial court in the case at bar. Consequently, we find Datacom's argument in this regard an inadequate basis to affirm the trial court's ruling in the instant case.

### III

The State's Attorney argues that the trial court's dismissal of the *quo warranto* actions was also improper. Specifically, the State's Attorney maintains that certain acts of Datacom and the City are in excess of their authorities. (See Ill. Rev. Stat. 1987, ch. 110, par. 18—101 *et seq.*; *People ex rel. Carey v. Lincoln Towing Service, Inc.* (1977), 54 Ill. App. 3d 61, 369 N.E.2d 94.) In *People ex rel. Ray v. Lewiston Community High School* (1944), 388 Ill. 78, 57 N.E.2d 486, the Illinois Supreme Court stated:

"A complaint in *quo warranto* is not, in the strict sense, a pleading. Following the function of the ancient writ, the complaint is the voice of sovereignty calling upon the defendant to answer by what authority he acts. The plaintiff is not required

to either allege or prove any facts. \*\*\* The burden is on the defendant [to disclaim or justify]. If he attempts to justify, he must allege and prove facts which justify his acts. \*\*\* The defendant, not the plaintiff, must, by his answer, tender the issues on which the rights claimed by him are to be litigated." 388 Ill. at 86-87.

■■ Applying the *Lewiston* principles to the instant case, we hold that the trial court improperly dismissed the *quo warranto* actions. The State's Attorney's complaint sufficiently and properly questions the authorities of the City and Datacom to: (1) issue demand notices that improperly imposed extrajudicially increased fines; (2) permit Datacom to "masquerade" as the City by utilizing the City seal and insignia on the demand notices; and (3) appropriate funds sent pursuant to the demand notices by negotiating checks made payable to the clerk of the circuit court and depositing those sums in Datacom's account at the Seaway National Bank.

The City and Datacom argue that Datacom's activities pursuant to its contract to collect allegedly delinquent parking ticket fines were undertaken on behalf of the City. Thus the City and Datacom contend that under the City's broad, home rule municipal powers, the City (through Datacom) could demand higher fines before seeking them in court as long as those demands do not exceed the maximum allowed by ordinance. On the basis of this home rule municipal power, the City and Datacom also maintain that the City has the authority to contract with a private company to enforce the City's regulatory traffic and parking powers and that its contract with Datacom simply delegates to Datacom the administrative and ministerial functions of parking ticket enforcement and collection. Therefore, the City and Datacom assert, Datacom was simply providing data processing or clerical services to the City in the City's efforts to collect delinquent parking ticket fines.

However, the State's Attorney's complaint alleges that Datacom and the City agreed that Datacom would act as independent contractor to provide all services necessary to effect collection of delinquent parking tickets and that Datacom would comply with applicable laws regarding debt collection services. Neither the City nor Datacom has provided any legal basis for a home rule municipality to accord to an independent contractor, which is acting as a debt collection agency, the powers to demand extrajudicially increased amounts of fines, to use the City seal and insignia, and to negotiate and deposit checks made payable to the clerk of the circuit court. See Ill. Rev. Stat. 1987, ch. 111, pars. 2012 (general category of violations of Collection

Agency Act), 2014 (threat of criminal prosecution), 2023 (enforcement of nonexistent right), 2024 (failure to disclose collection agency name), 2026 (unauthorized use of governmental badge or insignia), 2029, 2030 (unauthorized collection of fines or fees), 2032 (unauthorized collection of interest or other charges).

The City's home rule powers do not justify the City's demand for a greater amount than that stated in the parking citation, since the Chicago Municipal Code affords such power only to a judge of the circuit court. (See Chicago Municipal Code §§1—14, 27—363 (1987).) Moreover, neither the City nor Datacom has offered any specific legal foundation to justify the negotiation of checks made payable to the clerk or the deposit of these funds into Datacom's account at Seaway National Bank. As a result, we find the trial court improperly dismissed the State's Attorney's *quo warranto* claims.

For the reasons stated, we conclude that the trial court erred in dismissing the State's Attorney's complaint for failure to state claims for which relief could be granted and in permanently enjoining the DRE's administrative proceeding against Datacom. We also determine that the trial court should have dismissed Datacom's third-party complaint against the DRE. Accordingly, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

JIGANTI, P.J., and LINN, J., concur.