**Siamak AZIMI, Plaintiff,**

v.

**FORD MOTOR COMPANY, a Michigan corporation, Defendant.**

No. 97 C 0360.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 15, 1996.

Adam Jacob Krohn, Krohn & Moss, Ltd., Chicago, IL, for Plaintiff.

Mitchell Ware, R. Delacy Peters, Jr., Beverly Cassandra Fisher, Jones, Ware & Grenard, Chicago, IL, Beatriz Maria Olivera, Vigil, Berkley, Schulz & Gordon, P.C., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Siamak Azimi, purchased a 1997 Ford F–150 Lariat ("Lariat"), a vehicle manufactured by the Ford Motor Company ("Ford"), from Ron Hopkins Suburban Ford, Inc. ("Ron Hopkins"). The Lariat turned out to be defective and repeated repairs did not correct the problems. The plaintiff sued Ford for violations of the Magnuson–Moss Warranty Act ("Warranty Act") (Counts I and II), 15 U.S.C. § 2301 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act") (Count III), **815 ILCS 505/1 *et seq.* (West 1993 & Supp. 1997),** and for common law fraud (Count IV). Ford moved to dismiss for a variety of reasons. For the following reasons, the motion is denied.

## I.

There are two federal law and two state law counts in this complaint. Although a federal statute, the Warranty Act does not automatically confer federal subject matter jurisdiction. A federal court has jurisdiction over a Warranty Act claim only "if the amount in controversy is ... $50,000.00 (exclusive of interests and costs) computed on the basis of all [Warranty Act] claims." 15 U.S.C. § 2310(d)(3); *Marchionna v. Ford Motor Co.,* No. 94 C 275, 1995 WL 476591, at *7 (N.D.Ill. Aug.10, 1995) ("state claims may not be counted toward Magnuson–Moss' jurisdictional threshold"). Mr. Azimi does not attempt to and I do not consider whether he can establish jurisdiction for Counts I and II under the Warranty Act.

However, if Mr. Azimi can establish diversity jurisdiction, 28 U.S.C. § 1332(a), with respect to one of his state law counts, the court can assert supplemental jurisdiction, 28 U.S.C. § 1367(a), over the Warranty Act counts, *Haslam v. Lefta, Inc.,* No. 93 C 4311, 1994 WL 117463, at *2 (N.D.Ill. Mar.25, 1994), and over the remaining state law count, even if it does not meet the amount-in-controversy. *ITT Commercial Fin. Corp. v. Unlimited Automotive, Inc.,* 814 F.Supp. 664, 669 (N.D.Ill.1992) (Aspen, J .) (exercising supplemental jurisdiction over two counts of four count diversity complaint, where two counts did not satisfy amount in controversy) (relied upon by *Haslam, supra* ); *see also Lloyd v. Kull,* 329 F.2d 168, 170 (7th Cir. 1964) (where plaintiff's claim for negligence exceeded jurisdictional minimum, while claim for assault and battery was below minimum, court properly asserted jurisdiction over latter claim).

■ Since Mr. Azimi is a citizen of Illinois, while the defendant is a citizen of Michigan, the parties are diverse. Ford challenges Mr. Azimi's ability to meet the $75,001.00 amount in controversy.[1] Where a complaint invokes diversity jurisdiction, "the amount in controversy claimed by a plaintiff in good faith will be determinative on the issue of jurisdictional amount." *NLFC, Inc. v. Devcom Mid–America, Inc.,* 45 F.3d 231, 237 (7th Cir.1995). However, if the defendant challenges the plaintiff's amount allegation, the plaintiff bears the burden of establishing jurisdiction by competent proof, i.e., "proof to a reasonable probability that jurisdiction exists." *Id.* (quotation omitted). "This burden ... is not exacting[, as] the plaintiff is entitled to considerable latitude in supporting his allegations; he must be given the benefit of any facts he could conceivably prove in support of his allegations." *ITT Commercial Fin. Corp.,* 814 F.Supp. at 667 (quotation omitted). Ford will prevail only if it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (quotation omitted).

---

1. Ford argues that Mr. Azimi's claim is worth less than $50,001.00, disregarding the fact that on January 17, 1997, the day Mr. Azimi filed his complaint, the amount in controversy requirement was raised to $75,000.00. 28 U.S.C.

§ 1332(a), *as amended by* Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 205, 110 Stat. 3847, 3850 (1996) (effective January 17, 1997). Mr. Azimi's response acknowledges the change in the law.

In each of his four counts, Mr. Azimi seeks to recover the Lariat's purchase price of $27,203.50. This leaves a deficit of $47,797.50, which Mr. Azimi seeks to make up by aggregating attorneys' fees, incidental damages, and punitive damages. All of these count towards the amount in controversy and are recoverable under the Illinois Consumer Fraud Act. *Gent v. Collinsville Volkswagen, Inc.*, 116 Ill.App.3d 496, 72 Ill.Dec. 62, 66–68, 451 N.E.2d 1385, 1389–91 (1983); *see also Sarnoff v. American Home Prods. Corp.*, 798 F.2d 1075, 1078 (7th Cir.1986) (attorneys' fees may be included in amount in controversy if provided for by statute); 815 ILCS 505/10a(c) (West Supp.1997) (court may award reasonable attorneys' fees under Illinois Consumer Fraud Act). Thus, since the Illinois Consumer Fraud Act Count will serve as the jurisdictional anchor for this suit, the issues become (1) whether the Illinois Consumer Fraud Act Count survives a motion to dismiss, and, if so, (2) whether Mr. Azimi can show his entitlement to the attorneys' fees, incidental damages, and punitive damages under the Act to a reasonable probability.[2]

## II.

*Fed.R.Civ.P. 12(b)(6)*

Mr. Azimi alleges that the Ron Hopkins salesman made various misrepresentations. Ford argues that the salesman's statements cannot be attributed to it because an agency relationship does not exist between it and the dealership. I agree with the defendant that Ron Hopkins is not Ford's agent merely because it is an authorized Ford dealer or because, in the course of a sale, Ron Hopkins transferred to Mr. Azimi a Ford warranty. *Washington v. Courtesy Motor Sales, Inc.*, 48 Ill.App.2d 380, 199 N.E.2d 263, 264–65 (1964). However, a dealership may be an agent of the manufacturer.

*Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 221 Ill.Dec. 389, 398, 675 N.E.2d 584, 593 (1997). An agency relationship exists when one "undertakes to manage some affairs to be transacted for [and] . . . on account of the . . . principal." *Wargel v. First Nat'l Bank*, 121 Ill.App.3d 730, 77 Ill.Dec. 275, 278, 460 N.E.2d 331, 334(1984). "Apparent" agency exists where "a reasonably prudent [person], exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess" principal's authority. *Id.* 77 Ill. Dec. at 279, 460 N.E.2d at 335 (quotation omitted). The existence and scope of an agency relationship are questions of fact for the jury. *Id.* 77 Ill. Dec. at 278, 460 N.E.2d at 334.

To plead the existence of an agency relationship, the plaintiff must "allege some factual predicate (even though generalized rather than evidentiary in nature) to create the inference" of agency. *Rand Bond of N. Am., Inc. v. Saul Stone & Co.*, 726 F.Supp. 684, 687 (N.D.Ill.1989) (Shadur, J.). Mr. Azimi's response[3] states that Ford's logo is displayed at Ron Hopkins and on the warranties the plaintiff received, that Ford issues technical bulletins to the dealerships detailing potential vehicle problems, that Ford trains the dealership personnel regarding its warranties, and that the only persons who may repair and maintain the vehicles under warranty are Ford-trained, dealership-based mechanics. These allegations are sufficient to assert the existence of "apparent" agency relationship between Ford and Ron Hopkins (and, therefore, the salesman who interacted with Mr. Azimi).[4] *See Connick*, 221 Ill.Dec. at 399, 675 N.E.2d at 594 (where vehicle manufacturer requires dealers to display logos and trains dealership personnel, a trier of fact may find "apparent" agency relationship); *see also Malmberg v. American Honda Motor Co.*, 644 So.2d 888, 891 (Ala.1994) (car manufacturer's logos on deal-

---

**2.** Normally, a court first decides whether it has subject matter jurisdiction. Here, however, the existence of jurisdiction depends upon the viability of the Illinois Consumer Fraud Act claim, and Ford moves to dismiss that claim pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b), as well as 12(b)(1). Therefore, I must resolve the non-jurisdictional challenges to the claim first.

**3.** For the purposes of a motion to dismiss, I may consider allegations in the response which do not contradict the complaint. *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 439–40 (7th Cir.1994); *Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir.1992).

**4.** The same analysis applies to Count IV, common law fraud.

ership's "signs, literature, products, brochures, and plaques," fact that manufacturer "instructs and trains its dealers" and mechanics who work on cars under warranty, and plaintiff's belief that dealership represented manufacturer created issue of material fact as to existence of agency relationship between dealership and manufacturer) (cited in *Connick, supra* ).

■ Ford also argues that, even assuming that the salesman's statements are attributable to Ford, they are not actionable under the Illinois Consumer Fraud Act. To state a claim under the Illinois Consumer Fraud Act, the plaintiff must allege "(1) a deceptive act or practice; (2) an intent by the defendant that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving a trade or commerce." *Thacker v. Menard, Inc.,* 105 F.3d 382, 386 (7th Cir.1997) (quotation omitted).

■ In Count III, Mr. Azimi complains that the salesman misrepresented that the Lariat had no internal defects and that, if any defects were found, they would be promptly and satisfactorily repaired or the vehicle replaced. Ford contends that these allegations concern its warranties and, as such, the claim is for breach of warranty, not fraud. *Marchionna,* 1995 WL 476591, at *6 ("the Seventh Circuit has cautioned against allowing a plaintiff to turn a simple suit for breach of contract (or warranty) into a claim for fraud"); *Golembiewski v. Hallberg Ins. Agency, Inc.,* 262 Ill.App.3d 1082, 200 Ill.Dec. 113, 120–21, 635 ·N.E.2d 452, 459–60 (1994) ("Every individual breach of contract between two parties … does not amount to a cause of action cognizable under the [Illinois Consumer Fraud] Act."). However, the defendant ignores plaintiff's allegation that the Ron Hopkins salesman made the representations knowing from the issuance of Technical Services Bulletins on the Lariat that the facts were otherwise.

■ Ford also argues that the salesman's characterization of the Lariat as one of the top vehicles on the market was unactionable opinion· or "puffing." *Breckenridge v. Cambridge Homes, Inc.,* 246 Ill.App.3d 810, 186 Ill.Dec. 425, 433, 616 N.E.2d 615, 623 (1993). However, whether a statement is an opinion or fact depends upon the circumstances of the case, *Thacker,* 105 F.3d at 386, which are not yet developed at this stage of the litigation. "[A] single transaction is sufficient to establish a claim under the [Illinois] Consumer Fraud Act." *Roche v. Fireside Chrysler–Plymouth, Mazda, Inc.,* 235 Ill. App.3d 70, 175 Ill.Dec. 760, 769, 600 N.E.2d 1218, 1227 (1992). Thus, Mr. Azimi has stated a claim under the Illinois Consumer Fraud Act.[5]

*Fed.R.Civ.P. 9(b)*

■ Ford also argues that Mr. Azimi failed to plead his claim for fraud with "particularity." Fed.R.Civ.P. 9(b) ("in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"). Under that rule, **"[c]laims made pursuant to the Illinois Consumer Fraud Act … must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated."** *Gallagher Corp. v. Massachusetts Mut. Life Ins.· Co.,* 940 F.Supp. 176, 180 (N.D.Ill.1996) (quotation omitted). Mr. Azimi's complaint satisfies this standard by alleging that on or about May 7, 1996, at the Ron Hopkins dealership, an agent of Ford, a Ron Hopkins salesman, told the plaintiff that the Lariat was free of inherent defects and

---

5. The elements of common law fraud are similar: "(1) a false statement of material fact; (2) by· one who knows or believes it to be false; (3) made with the intent to induce action by another in reliance on the statement; (4) action by the other in reliance on the truthfulness of the statement; and (5) injury to the other resulting from that reliance." *Athey Prods. Corp. v. Harris Bank Roselle,* 89 F.3d 430, 434 (7th Cir.1996) (quotation omitted). The difference between common law and statutory fraud is that the latter eliminated the requirement of scienter, element (2), and actual reliance on the deception, element (4). *Thacker,* 105 F.3d at 386. Nevertheless, Mr. Azimi **states a common law fraud claim** because he alleges that Ford issued technical bulletins about possible vehicle defects, the salesman knew about the bulletins, yet did not inform Mr. Azimi, and Mr. Azimi bought the Lariat believing it to be free of defects.

that Ford guaranteed the prompt repair or replacement of any defective parts on the vehicle in the event of any failure to inform to express warranties.[6] Thus, Count III and IV survive the motions to dismiss under Fed. R.Civ.P. 12(b)(6) and 9(b).

## III.

### Attorneys' Fees

Relying on *Ciampi v. Ogden Chrysler Plymouth*, 262 Ill.App.3d 94, 199 Ill.Dec. 609, 623, 634 N.E.2d 448, 462–63 (1994), Mr. Azimi claims that he will be entitled to $35,000.00 in attorneys' fees. In *Ciampi*, the court awarded the plaintiff $35,070.00 in attorneys' fees pursuant to the Illinois Consumer Fraud Act. *Id.* 199 Ill.Dec. at 612, 634 N. E.2d at 451. *Ciampi* was a three-claim case, and involved a vehicle which turned out to be different from what the dealership represented it to be. *Id.* 199 Ill.Dec. at 612–17, 634 N.E.2d at 451–55. Although the suit began with three defendants, the trial was prosecuted against only one. *Id.* 199 Ill.Dec. at 612, 634 N.E.2d at 451. Utilizing a standard for awarding attorneys' fees similar to the federal one,[7] the court affirmed the award. *Id.* The suit at bar involves complex material issues, such as agency, similar to those in *Ciampi*. *Id.* In short, I cannot say, with legal certainty, that Mr. Azimi will not be entitled to $35,000.00 in attorneys' fees. *See M & D Balloons, Inc. v. Texas Balloon & Novelty Co.*, No. 91 C 7313, 1992 WL 92030, at *2 (N.D.Ill. Apr.30, 1992) (countenancing plaintiff's alleged amount of attorneys' fees after noting that, in addition to litigating substantive issues, plaintiff is forced to expend resources in defense of jurisdiction).

### Incidental Damages

Relying on *Gent*, 72 Ill.Dec. at 67, 451 N.E.2d at 1390, Mr. Azimi argues that, under the Illinois Consumer Fraud Act, he will be entitled to a reasonable rental expense of a substitute vehicle, regardless of whether he actually rented such a vehicle, for each day he was not able to utilize the Lariat. In *Gent*, the parties stipulated to $10.00 per day as a reasonable charge for a rental vehicle. *Id.* Since Mr. Azimi does not set forth a different figure, I will use the amount in *Gent.* Mr. Azimi purchased the Lariat on or about May 7, 1996 and revoked his acceptance on December 15, 1996. The Lariat was in the plaintiff's possession for 222 days. Thus, assuming that Mr. Azimi was unable to use the Lariat during that entire period, his reasonable rental recovery would be $2,220.00. Mr. Azimi also claims that he is entitled to aggravation and inconvenience damages resulting from the Ron Hopkins salesman's misrepresentations. *Roche*, 175 Ill.Dec. at 770, 600 N.E.2d at 1228 (awarding aggravation and inconvenience damages under Illinois Consumer Fraud Act, where dealership mislead plaintiff into believing that her trade-in vehicle provided ample down payment for new vehicle and that financing would be arranged if necessary). Since Mr. Azimi does not provide an amount, the court will use $750.00 awarded in *Roche*. *Id.*

Invoking *First Chicago Gary–Wheaton Bank v. Gaughan*, 275 Ill.App.3d 53, 211 Ill.Dec. 553, 559, 655 N.E.2d 936, 942 (1995), Mr. Azimi contends that he will be entitled to damages of $50.00 per day for "loss of use" of

---

**6.** The pleading requirements for common law fraud under Fed.R.Civ.P. 9(b) are identical to those under the Illinois Consumer Fraud Act. *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir.1992).

**7.** In Illinois, "[t]he most important factor in determining whether fees are reasonable is the amount of time necessarily spent on the case." *Ciampi*, 199 Ill.Dec. at 622, 634 N.E.2d at 461. Moreover, when claims are "based on the same evidence[,] ... the time spent on each issue [cannot] be distinguished." *Id.* "In the Seventh Circuit, reasonable attorneys' fees are determined by multiplying the hours reasonably expended on the litigation by a reasonable hourly rate ...." *Safeguard Bus. Sys., Inc. v. Reed–Rite, Inc.*, No. 90 C 1147, 1995 WL 557456, at *1 (N.D.Ill. Sept.15, 1995). "Generally, when a plaintiff is entitled to attorneys' fees by statute on one claim and prevails on other claims arising out of the same common nucleus of facts, the plaintiff is entitled to recover fees on all of the work done on the related claims." *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, No. 90 C 2370, 1994 WL 605719, at *1 (N.D.Ill. Nov.3, 1994).

the Lariat while it was inoperable during the entire period that Mr. Azimi had the vehicle in his possession, from May 7, 1996 to December 15, 1996. *First Chicago Gary–Wheaton Bank* was a replevin action, where the party seeking replevin lost the suit and was held liable for the owner's loss of use of the wrongfully detained car. *Id.* (citing 735 ILCS 5/19–123 (West 1993) (damages if judgment against plaintiff in replevin action)). *First Chicago Gary–Wheaton Bank* involved the parties' stipulation to the value of the loss of use of a unique and valuable sports car whose "possession ... [wa]s an integral part of the use of such a vehicle." 211 Ill.Dec. at 559, 655 N.E.2d at 942. Assuming the relevance of the replevin recovery rule to damages under the Illinois Consumer Fraud Act [8] and in the absence of a stipulation, Mr. Azimi will have to quantify the consequences of his inability to use the Lariat. *See supra* note 9. Yet, he alleges no such consequences. Thus, Mr. Azimi has shown by competent proof that he will be entitled to, at most, $2,970.00 in incidental damages.

*Punitive Damages*

Mr. Azimi anticipates receiving punitive damages under the Illinois Consumer Fraud Act. 815 ILCS 505/10a(a) (West. Supp. 1997); *see Cellular Dynamics, Inc. v. MCI Telecomm. Corp.*, No. 94 C 3126, 1997 WL 285830, at *1, *5–6 (N.D.Ill. May 23, 1997) (awarding punitive damages under Illinois Consumer Fraud Act).

Where punitive damages are required to satisfy the jurisdictional requirement in a diversity case, a two-part inquiry is necessary. The first question is whether punitive damages are recoverable as a matter of state law. If the answer is yes, the court has subject matter jurisdiction unless it is clear beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount.

*Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1211–12 (7th Cir.1995). "When a claim for punitive damages makes up the bulk of the amount in controversy, and may even have been colorably asserted solely to confer jurisdiction, [the courts] should scrutinize that claim closely." *Anthony v. Security Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir.1996).

The Seventh Circuit has interpreted Illinois law to "[dis]favor punitive damages and [to] insist that [the] plaintiffs ... establish not only simple fraud but gross fraud, breach of trust, or other extraordinary or exceptional circumstances clearly showing malice or willfulness." *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 275 (7th Cir.1996) (quotation omitted). Acts done with reckless disregard for the rights of others may also justify the award of punitive damages. *Smith v. Prime Cable of Chicago*, 276 Ill.App.3d 843, 213 Ill.Dec. 304, 315, 658 N.E.2d 1325, 1336 (1995). The Illinois Supreme Court has counseled courts to be cautious in awarding punitive damages [9] due to their penal nature. *Roboserve, Inc.*, 78 F.3d at 275.

Mr. Azimi complains that the Lariat suffered from defects in the transmission, radio, paint, side mirror, exhaust system, and the engine, and that, despite the warranties, it

---

8. The courts have measured the "loss of use" damages in a replevin action by quantifying the use to which the property would have been put had it been in the party's possession, such as renting the property and receiving lease payments, or realizing profit for use of the property. *International Harvester Credit Corp. v. Helland*, 151 Ill.App.3d 848, 104 Ill.Dec. 833, 840, 503 N.E.2d 548, 555–56 (1987). Under the Illinois Consumer Fraud Act, "[t]he court ... may award actual economic damages." 815 ILCS 505/10a(a) (West Supp.1997). It would appear that "loss of use" damages would be subsumed under this section. *See Gent*, 72 Ill.Dec. at 66, 451 N.E.2d at 1389.

9. Although the final determination regarding punitive damages is for the trier of fact, "[t]he initial determination of whether the facts and circumstances justify the imposition of punitive damages is a question of law." *Malooley v. Alice*, 251 Ill.App.3d 51, 190 Ill.Dec. 396, 400–01, 621 N.E.2d 265, 269–70 (1993).

was not repaired or replaced. However, according to Mr. Azimi's complaint, Ford's agent, the Ron Hopkins salesman, knowingly misrepresented that the Lariat had no inherent defects, that it would be promptly and satisfactorily repaired or replaced, and that it was one of the top vehicles in the market. Based on the cases upon which Mr. Azimi relies, *Ciampi*, 199 Ill.Dec. at 622, 634 N.E.2d at 461;[10] *Totz v. Continental Du Page Acura*, 236 Ill.App.3d 891, 177 Ill.Dec. 202, 207–11, 602 N.E.2d 1374, 1379–83 (1992);[11] *Crowder v. Bob Oberling Enters., Inc.*, 148 Ill.App.3d 313, 101 Ill.Dec. 748, 749–751, 499 N.E.2d 115, 116–18 (1986);[12] *Tague v. Molitor Motor Co.*, 139 Ill.App.3d 313, 93 Ill.Dec. 769, 772, 487 N.E.2d 436, 439 (1985);[13] *Gent*, 72 Ill.Dec. at 63–66, 451 N.E.2d at 1386–89,[14] I cannot say "to a legal certainty that a verdict awarding ... punitive damages [of $9,827.50 to Mr. Azimi] would be excessive and set aside for that reason."[15] *Cadek*, 58 F.3d at 1212 (quotation omitted). Therefore, Mr. Azimi has shown, "to a reasonable probability," *NLFC, Inc.*, 45 F.3d at 237, his future entitlement to $75,001.00, comprising the purchase price of the

Lariat ($27,203.50), attorneys' fees ($35,000.00), incidental damages ($2,970.00), and punitive damages ($9,827.50). This court accordingly has diversity jurisdiction over the Illinois Consumer Fraud Act claim, Count III, and asserts supplemental jurisdiction over the Warranty Act claims, Counts I and II, and the common law fraud claim, Count IV.

## Conclusion

For the reasons stated above, the motion to dismiss is denied.

---

**10.** In *Ciampi*, the court upheld the award of $100,000 in punitive damages. 199 Ill.Dec. at 623, 634 N.E.2d at 462. Here, the defendant is alleged to have inflated and refused to disclose the suggested retail price of the car, misinformed the buyer that she would receive a new car warranty, although it had expired, and altered the odometer. *Id.* 199 Ill.Dec. at 622, 634 N.E.2d at 461.

**11.** In *Totz*, the court affirmed the award of $5,000.00 in punitive damages. 177 Ill.Dec. at 204, 602 N.E.2d at 1376. Here, the defendant knowingly suppressed the fact that a car had been extensively damaged in an accident, while telling the plaintiff that the vehicle was "in perfect condition." *Id.* 177 Ill. Dec. at 204, 211, 216, 602 N.E.2d at 1376, 1381, 1386.

**12.** In *Crowder*, the court upheld the award of $9,000.00 in punitive damages severally against the defendants. 101 Ill.Dec. at 749, 499 N.E.2d at 116. Here, the defendants turned a blind eye to the car's salvage history, thereby failing to inform the plaintiff that the allegedly "good used car" was "a salvage car, had been standing in brackish water over the engine and had a bent frame." *Id.*

**13.** In *Tague*, the court upheld the award of $17,000.00 in punitive damages. 93 Ill.Dec. at 770,

487 N.E.2d at 437. In that case, the defendant altered the odometer from 85,000 to 40,000 miles and deactivated the brake warning light, apparently to disguise the fact that the brakes had not been fixed. The defendant told the plaintiff that the brakes had been fixed, and the plaintiff was unprepared when the brakes failed. *Id.* 93 Ill.Dec. at 771–72, 487 N.E.2d at 438–39.

**14.** In *Gent*, the court reduced a $12,000.00 punitive damages award to $3,000.00. 72 Ill.Dec. at 68, 451 N.E.2d at 1391. In that case, the defendant told the plaintiff that "the car was in excellent condition," while, in fact, the vehicle's underside "was rusted and there had been paint sprayed to camouflage the rust." *Id.* 72 Ill.Dec. at 63–64, 451 N.E.2d at 1386–87. In addition, the defendant told the plaintiff that he had a full 30–day warranty for all parts in labor, although the warranty was limited to a 10 percent discount on parts and labor for 30 days. *Id.* Having reviewed the record, the court concluded that the jury reasonably could have found that the defendant "acted with fraud, or wilfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Id.* 72 Ill.Dec. at 68, 451 N.E.2d at 1391.

**15.** Ford has not brought to my attention analogous cases in which the award of punitive damages was set aside.