Joseph WILLIAMS, on behalf of himself and others similarly situated, Plaintiff,

v.

FORD MOTOR COMPANY and Highland Park Ford, Inc., Defendants.

No. 97 C 162.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 20, 1997.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Beth Ilyse Solomon, Edelman & Combs, Chicago, IL, for plaintiff.

Alfred M. Swanson, Jr., Peter Francis Heraty, Jones, Ware & Grenard, Chicago, IL, Brian C. Anderson, Evelyn L. Becker, Jessica Davidson Miller, O'Melveny & Myers, LLP, Washington, DC, for Ford Motor Co.

Stuart Berks, Michael Joseph Devine, Phillip Michael Schreiber, James Edward O'Halloran, III, Deutsch, Levy & Engel, Chicago, IL, for Highland Park Ford, Inc.

### MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff Joseph Williams (Williams), on behalf of a putative class of individuals similarly situated, brought this action against defendants Ford Motor Company (Ford) and Highland Park Ford, Inc. (Highland), claiming violations of the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962(c), the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, and the Magnuson Moss Consumer Warranty Act, 15 U.S.C. § 2310. Specifically, plaintiff claims that defendants fraudulently sold plaintiff an extended service plan in connection with the purchase of a used car, without disclosing the existence of an inspection fee. In our July 29, 1997 memorandum and order (order), this court dismissed plaintiff's RICO claim against Highland (Count I) and his class action Magnuson Moss Act claim against Ford (Count III), although we declined to dismiss plaintiff's individual Magnuson Moss Act claim (Count IV). In addition, we deferred ruling on plaintiff's claim under the Illinois Consumer Fraud Act (Count II) and asked the parties to further address whether or not, under Illinois agency law, Highland's conduct in imposing the inspection fee could be attributable to Ford. Now before the court is defendant Ford's motion to dismiss plaintiff's Consumer Fraud Act claim. For the reasons stated below, defendant Ford's motion to dismiss Count II is denied.

### DISCUSSION

As the relevant facts have already been set forth in our previous order, we will only

briefly summarize them here. The dispute centers on plaintiff's June 17, 1994 purchase of a used Ford automobile from Highland, an authorized Ford dealer. In connection with this purchase plaintiff paid an additional $1,195 for an extended service plan (ESP) which provided coverage for repairs incurred after the expiration of the Ford's basic limited warranty. The only mention of costs beyond the initial purchase price of the ESP was the requirement of a $50 deductible per repair visit. The ESP specifically stated that "All you pay is the deductible." Under the ESP, plaintiff was entitled to receive covered repairs at all participating Ford dealers in the United States and Canada. Plaintiff's car lost power on July 24, 1996, and he took it to Highland for service. Highland informed him that Ford required the payment of an inspection fee of $612.95 before it would decide whether the problems were covered by the ESP. On July 31, 1996, plaintiff paid the inspection fee and Highland inspected the vehicle.

Speaking on behalf of the putative class, plaintiff now claims that Ford is liable under the Illinois Consumer Fraud Act (CFA), 815 ILCS 505/1 *et seq.*, for Highland's failure to disclose that all claims under the ESP were subject to a substantial inspection fee. To state a claim under the CFA, the plaintiff must allege "(1) a deceptive act or practice; (2) an intent by the defendant that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving a trade or commerce." *Thacker v. Menard, Inc.*, 105 F.3d 382, 386 (7th Cir. 1997) (quotation omitted).[1]

In our previous order, we noted that the parties agreed that Ford cannot be held liable under a *respondeat superior* theory for the actions of Highland connected to the sale of Ford's vehicles and products. The parties therefore agreed that plaintiff could not recover from Ford for conduct undertaken in connection with the sale of the ESP. Nevertheless, plaintiff contended that Highland was Ford's agent for the purposes of providing service and repairs required under the ESP and that Ford was thus liable for Highland's deceptive imposition of a substantial and unauthorized inspection fee. Because we did not find this argument to be dispositive of the agency issue, we requested that the parties submit briefs further addressing that issue.

Defendant Ford now renews its motion to dismiss the CFA claim against it on the basis of two separate arguments. First, Ford contends that plaintiff cannot state a claim under the CFA since the conduct complained of does not constitute a deceptive act. Second, Ford argues that even if we accept that the facts alleged state a claim against Highland, plaintiff has not alleged facts sufficient to establish the existence of an agency relationship warranting attribution of liability to Ford. We address the agency argument first, and then determine whether plaintiff has stated a claim under the CFA.

Before we do this, however, it is worth reviewing what has been argued and what has been decided thus far. This review is necessary to make sense of each side's arguments, which have taken a confusing turn. In his original complaint, plaintiff brought his CFA claim against both Ford and Highland, alleging that "Highland ... engaged in unfair and deceptive acts and practices, by imposing a substantial inspection fee ....." (cplt.¶ 60). In his amended complaint, however, plaintiff deleted Highland as a defendant with respect to the CFA claim and deleted the above allegation, leaving only the allegation that "Highland failed to disclose that all claims were subject to a substantial inspection fee ...." (am.cplt.¶ 41). On this basis plaintiff sought to hold Ford liable as Highland's principal. (*Id.*). However, in his initial response to defendant's motion to dis-

---

1. The Illinois Consumer Fraud Act provides as follows:

 Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, ...in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.
 815 ILCS 505/2.

miss, plaintiff did not argue that Highland's failure to disclose at the time of the ESP's sale was a deceptive act attributable to Ford. To the contrary, plaintiff conceded that he was not arguing about Highland's conduct at the time of the sale, but rather was alleging that Highland's imposition of the inspection fee two years after the sale gave rise to liability that could be imputed to Ford (pl. resp.I at 17). Specifically, plaintiff argued that Highland's act of making repairs contingent upon payment of an unauthorized inspection fee violated the CFA and could be attributed to Ford since the conduct occurred during the course of performing services under the ESP and not during the sale. *See Ventura v. Ford Motor Corp.,* 180 N.J.Super. 45, 433 A.2d 801, 810–11 (App.Div.1981). Defendant now attempt to use plaintiff's argument to paint him into a corner. Specifically, defendant argues that since plaintiff has conceded that this case cannot be about Highland's conduct at the time of the ESP's sale, we can only focus on whether or not the actual imposition of the fee was deceptive under the CFA (without reference to whether Highland's initial failure to disclose would have been actionable). Plaintiff now changes his argument yet again and asks this court to find that Highland (and therefore Ford) violated the CFA by its initial failure to disclose the fee.

We first note that on the basis of the facts alleged in the complaint, plaintiff would seem to make out a claim against Highland. Specifically, if Highland failed to disclose the existence of an inspection fee when it sold the ESP and then imposed the fee when it was not authorized to do so, a deceptive practice claim under the CFA may well be established. *Elder v. Coronet Ins. Co.,* 201 Ill. App.3d 733, 146 Ill.Dec. 978, 558 N.E.2d 1312, 1321 (1st Dist.1990). However, Highland is not presently a party to plaintiff's CFA claim and plaintiff has chosen to focus his arguments on establishing the existence of an agency relationship between Ford and Highland. In so doing, plaintiff has unduly complicated his position by conceding that Ford could not be held liable for the actions of Highland connected with the sale of the ESP. This concession has left the parties arguing over whether Highland's conduct

should be characterized as a "failure to disclose" the existence of the ESP at the time of sale (perhaps a violation of the CFA, but, given plaintiff's concession, not sufficient to give rise to *respondeat superior* liability), or an unfair "imposition" of an inspection fee at the time of service (which would give rise to *respondeat superior* liability, but, as defendant argues, arguably does not allege conduct which states a violation of the CFA).

◼ We find that the approach to determining CFA liability adopted by the parties in this case is confused and creates an artificial division between acts taken at the time of sale and acts taken at the time of service. While we acknowledge that there may be some basis for such a dichotomy in the case law, *see e.g., Washington v. Courtesy Motor Sales, Inc.,* 48 Ill.App.2d 380, 199 N.E.2d 263, 265 (1st Dist. 1964).; *Ventura,* 180 N.J.Super. 45, 433 A.2d 801, 810–11 (App.Div.1981); *Koperski v. Husker Dodge, Inc.,* 208 Neb. 29, 302 N.W.2d 655, 665 (1981), a more reasonable approach to determining Ford's liability here is to look at the transaction as a whole and assess whether Highland was acting as either the "actual" or "apparent" agent of Ford, based on the facts alleged. This approach is consistent with the one recently adopted by the Illinois Supreme Court. *See Connick v. Suzuki,* 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 592 (1996) (finding that issue of whether an authorized dealer is an agent of the manufacturer is one that depends on the facts pled in the particular case and not the timing of the allegedly deceptive act).

◼ In light of this, we turn to the issue of whether plaintiff has alleged facts showing the existence of an agency relationship between Highland and Ford. "A complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship. It is insufficient to merely plead the legal conclusions of agency." *Id.* 221 Ill.Dec. at 396, 675 N.E.2d at 592. An agency relationship exists when one "undertakes to manage some affairs to be transacted for [and]...on account of the ...principal." *Wargel v. First National Bank,* 121 Ill.App.3d 730, 77 Ill.Dec. 275, 278,

460 N.E.2d 331, 334 (5th Dist. 1984). The test of agency is the existence of the right to control the method or manner of accomplishing a task by the alleged agent, as well as the agent's ability to subject the principal to liability. *Id.* An agency relationship may exist when the agent has "actual authority" to act on the principal's behalf, *Connick,* 221 Ill.Dec. 389, 675 N.E.2d at 592, or when the agent acts with the "apparent authority" of the principal. *Wargel,* 77 Ill.Dec. 275, 460 N.E.2d at 335. We note that Illinois law is not well developed with respect to the type of conduct by an authorized automobile dealer that would bind the manufacturer as principal, although *Connick* provides some guidance in this regard. 221 Ill.Dec. 389, 675 N.E.2d at 592–93.

 First, although plaintiff may have implicitly pled that Highland had "actual authority" to act on Ford's behalf in imposing the inspection fee, there are no explicit allegations, nor has plaintiff ever argued the existence of an agency relationship based on actual authority. Our original understanding of plaintiff's position—based on the allegations in the complaint and arguments proffered by plaintiff throughout this case—was that Highland acted on its own in imposing the fee. We think that this understanding continues to be accurate. Specifically, in his complaint, plaintiff states that "F[ord] has or [sic] written agreement with each dealer requiring the dealer to honor the service plans and setting forth the compensation which F[ord] will pay the dealer for performing the repairs and service" (am.cplt.¶ 18). However, this does not establish that Ford expressly authorized Highland to require the payment of an inspection fee prior to the receipt of services provided under the ESP; rather, it merely shows that there was a formal relationship between Highland and Ford with regard to the administration of the ESP and that Ford paid Highland for work done pursuant to the plan. This, without more, is merely an allegation that Highland was given permission to sell ESPs and to provide required repairs. It does not support the conclusion that Ford had thereby agreed to expose itself to liability for all of Highland's actions in connection with the ESPs, and nothing alleged here would suggest that Ford explicitly endowed Highland with the authority to impose non-contractual fees. Actual agency is a specific grant of authorization to perform a specific act and usually requires some acquiescence by the agent and some control by the principal. *See Progress Printing Corp. v. Jane Byrne Political Comm.,* 235 Ill.App.3d 292, 176 Ill.Dec. 357, 601 N.E.2d 1055, 1066 (1st Dist. 1992). No such specific grant has been alleged here.

 However, we find that plaintiff has alleged facts sufficient to establish that Ford may be liable for Highland's conduct under a theory of "apparent agency." Apparent agency arises when the principal holds an agent out as possessing the authority to act on its behalf, and a reasonably prudent person, exercising diligence and discretion, would naturally assume the agent to have this authority in light of the principal's conduct. *Letsos v. Century 21–New West Realty,* 285 Ill.App.3d 1056, 221 Ill.Dec. 310, 317, 675 N.E.2d 217, 224 (1st Dist. 1996). The elements of apparent agency are that (1) the principal consented to or knowingly acquiesced in the agent's exercise of authority, (2) based on the actions of the principal and agent, the third person reasonably concluded that the party was an agent of the principal, and (3) the third person justifiably relied on the agent's apparent authority to his detriment. *Id.* Plaintiff argues that the fact that the ESP issued by Ford directed plaintiff to take his vehicle to a Ford dealer for repairs gave rise to the appearance of an agency relationship.[2]

---

**2.** Plaintiff devotes a great deal of time reiterating the argument presented in its original briefs, namely, that a dealer acts as a manufacturer's agent for the purpose of performing services required under the manufacturer's warranty. *See Halprin v. Ford Motor Co.,* 107 N.C.App. 423, 420 S.E.2d 686, 689–90 (1992); *Koperski,* 208 Neb. 29, 302 N.W.2d 655. However, this is precisely the argument that we initially found to be insufficient and therefore requested additional briefing. We repeat that the issue is not whether it is always true that a dealer who performs services under a warranty acts as the agent of the manufacturer, but rather whether in this case Highland actually possessed, or acted in such a way that would permit a reasonable person to assume that it possessed, Ford's authority to impose an inspection fee. *See Connick,* 221 Ill.Dec.

In support of his argument plaintiff directs this court's attention to *Azimi v. Ford Motor Company*, 977 F.Supp. 847 (N.D.Ill. 1996). In that case the court found that plaintiff had sufficiently alleged that an authorized Ford dealer acted as the apparent agent of Ford by stating that "Ford's logo is displayed at [the dealer] and on the warranties the plaintiff received, that Ford issues technical bulletins to the dealerships detailing potential vehicle problems, that Ford trains the dealership personnel regarding its warranties, and that the only persons who may repair and maintain the vehicles under warranty are Ford-trained, dealership-based mechanics." *Id.* at 851. Plaintiff notes here that Highland is an authorized Ford dealer, and that "Highland informed plaintiff that F[ord] required that he pay an inspection fee of $612.95 before F[ord] would decide whether the problems which caused the mechanical breakdown were covered by the Extended Service Plan" (am.cplt.¶ 15). Plaintiff has also alleged that the ESP directed him to take his car to "all participating Ford and Lincoln–Mercury dealers" for covered services (am.cplt.¶ 10). While it is true, as defendant notes, that plaintiff's factual allegations are not as extensive as the plaintiff's in *Azimi*, we are dealing with notice pleading here and find that plaintiff's allegations are enough to survive this motion to dismiss. Further, we disagree with defendant's contention that we must reject plaintiff's apparent agency argument since he has not shown that Ford had knowledge of or consented to Highland's actions. We may reasonably infer from the fact that Highland had a "policy and practice" of imposing inspection fees, and failing to disclose their existence at the time of sale (am.cplt.¶¶ 19–20), that Ford possessed the requisite knowledge of Highland's conduct, and in any event, the issue is apparent, not actual, authority. Since plaintiff has adequately pled facts demonstrating the existence of an agency relationship between Ford and Highland in this case, we find that the complaint survives defendant's motion to dismiss on this issue.

■ Having determined that Ford may be liable under an "apparent agency" theory, we turn next to the issue of whether its agent's conduct states a claim for deceptive practices under the CFA. We think it does. While charging a fee in and of itself may not be deceptive under the CFA, we are dealing with more than that here.[3] Plaintiff is alleging that Highland misrepresented the cost of the ESP by failing to disclose the existence of a hidden inspection fee that was, to his surprise, imposed as a precondition to receiving covered services under the plan. Plaintiff was forced into a position where he either had to pay the substantial fee, which in this case constituted almost 40% of the value of the car, or be left without a functioning vehicle and unable to take advantage of the warranty plan for which he had already paid. We acknowledge that Highland may, as a general matter, be entitled to payment for the inspection services it renders. However, we think that plaintiff has alleged more than a simple fee-for-service arrangement here. Specifically, we find that plaintiff has sufficiently stated a claim of consumer fraud by alleging that Highland concealed the fee and/or misrepresented the cost of the ESP. *See Aitken v. Fleet Mortgage Corp.*, No. 90–C–3708, 1992 WL 33926, *4 (N.D.Ill. Feb. 12, 1992) ("A misrepresentation of the amount due in a manner designed to conceal the true amount required states a claim under the Consumer Fraud Act.").

■ Further, under the plain language of the CFA, the sale and distribution of services under the ESP occurred "in the conduct of any trade or commerce." 815 ILCS 505/2. The CFA defines the terms "trade" and "commerce" to mean the "advertising, offering for sale, sale, or distribution of any services and any property...." 815 ILCS 505/1(f). These terms are to be given a liberal construction so that the broad pur-

---

389, 675 N.E.2d at 592. This requires an analysis of the facts surrounding the relationship between Highland and Ford.

**3.** Defendant attempts to hold fast to the artificial division between acts which occurred at the time of sale and acts which occurred at the time of service. However, as we stated above, we think that it is more consistent with Illinois law to determine whether the transaction, when viewed as a whole, gave rise to the conduct actionable under the CFA and attributable to Ford.

poses of the CFA are achieved. *See People ex rel. Daley v. Datacom Sys. Corp.*, 176 Ill.App.3d 697, 126 Ill.Dec. 212, 531 N.E.2d 839 (1st Dist.1988), *aff'd* 146 Ill.2d 1, 165 Ill.Dec. 655, 585 N.E.2d 51 (1991). Clearly, Highland's sale of the ESP in connection with the sale of a used automobile and its subsequent provision of covered repair services constitutes the type of "trade or commerce" contemplated by the CFA.

Accordingly, we find that plaintiff has stated a claim for relief under the CFA against Ford and therefore deny Ford's motion to dismiss.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss Count II is denied.