**Joseph WILLIAMS, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**FORD MOTOR COMPANY and Highland Park Ford, Inc., Defendants.**

**No. 97 C 162.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 25, 2000.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Beth Ilyse Solomon, Jeffrey T. Mitchell, Edelman, Combs & Latturner, Chicago, IL, for Plaintiff.

Alfred M. Swanson, Jr., Friedman & Holtz, P.C., Chicago, IL, Stuart Berks, Michael Joseph Devine, Phillip Michael Schreiber, James Edward O'Halloran, III, Deutsch, Levy & Engel, Chicago, IL, Brian C. Anderson, Evelyn L. Becker, Jessica Davidson Miller, O'Melveny & Myers, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff Joseph Williams moves to certify a class action against defendant Ford Motor Company (Ford) for alleged violations of the Illinois Consumer Fraud Act. For the reasons stated below, plaintiff's motion is denied.

## BACKGROUND

Plaintiff's complaint in this lawsuit has been amended numerous times and by the third amended complaint his theory has markedly changed. Some of the core factual allegations remain the same.[1] On June 17, 1994, plaintiff purchased a used 1990 Ford Festiva from Highland Park Ford, Inc. (Highland), an authorized Ford dealer. Along with that vehicle plaintiff also purchased an extended service plan (ESP) that provided coverage for certain repairs incurred after the expiration of the manufacturer's basic limited warranty. At the time of purchase the only mention of costs beyond the initial purchase price of the ESP was the requirement of a $50 deductible per repair visit. Ford later sent plaintiff the actual ESP contract. That contract lists the specific repairs covered by the ESP and also describes the parts and services not covered by the policy. Furthermore, the contract states that covered repairs will be "limited to the then-present N.A.D.A. trade-in-value of the vehicle per repair visit"(3[d] am.cplt.exh.E).

On approximately July 24, 1996, plaintiff's Festiva lost power and he took it to Highland for service. At this point the allegations in plaintiff's third amended complaint differ from those in his earlier complaints. In his earlier versions plaintiff alleged that when he took his car to Highland for service he was informed that Ford required payment of an inspection fee before it would decide whether the problems with his car were covered by the ESP (2[d] am.cplt., ¶ 16). Plaintiff alleged that after he paid the fee his car was inspected and damage to the engine was estimated to be $6,000. Since the cost of repair exceeded his car's N.A.D.A. value, Ford elected to pay plaintiff the trade-in value of his car rather than conduct the repairs (2[d] am.cplt., ¶¶ 16–18). Based on these factual allegations, plaintiff's class theory was that Highland required all ESP policyholders to pay an undisclosed inspection fee in order to claim a repair under their policies (2[d] am.cplt., ¶¶ 19–23, 27). Plaintiff contended that this fee was Highland's idea, but Ford was liable on an apparent authority concept. See Williams v. Ford, 990 F.Supp. 551, 554–55 (N.D.Ill.1997).

In his third amended complaint plaintiff's factual allegations and class theory have changed significantly. Plaintiff no longer alleges that Ford charged an inspection fee to all ESP policyholders claiming repairs under the ESP. Instead, plaintiff now concedes that an inspection fee was charged only where the repair was not covered by the ESP (3[d] am. cplt., ¶ 20). These revised allegations are consistent with plaintiff's deposition testimony.[2] Plaintiff testified that after he dropped his car off at Highland for repairs, the service manager called to inform him that his engine needed to be replaced and that inspectors from Ford were coming in to exam-

---

1. The facts are described more fully in our previous opinion, Williams v. Ford, 980 F.Supp. 938 (N.D.Ill.1997).

2. The revised allegations are also consistent with the testimony of Highland's service manager, George Link. He testified that Highland's practice is to inform ESP policyholders when they come in for repairs that they may have to pay for diagnostic service if the problem with their car is not covered under the ESP (Link dep. at 24–25).

ine his car (Williams dep. at 96–105). Some days later, when plaintiff came to Highland to pick up his car, he was informed that the inspectors had determined that the cost of repairs exceeded the N.A.D.A. value of his car, and that Ford had decided to pay him the trade-in value instead of replacing the engine. Plaintiff at that time was informed that he was responsible for a diagnostic fee since the repairs were not covered under the ESP (Williams dep. at 122–133). Plaintiff testified that he had not been charged an inspection fee until then (Williams dep. at 83, 114).

Based on these facts, plaintiff's third amended complaint advances a new class theory that focuses on the disclosures made to ESP customers at the time of purchase rather than the fees charged at the time of repair. Plaintiff alleges that Ford has a policy of deceiving ESP customers by not disclosing two limitations when selling the ESPs: 1) that customers are required to pay a diagnostic fee if the claimed repair is not covered under the plan, and 2) that repairs costing more than the trade-in value of the car are not covered under the plan.[3] Plaintiff continues to invoke agency law as the basis of Ford's liability, but now relies on a theory of actual authority rather than apparent authority, arguing that Ford specifically authorized Highland's practice of selling ESPs without making proper disclosures.

Plaintiff's original complaint alleged violations of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962(c), the Magnuson Moss Consumer Warranty Act, 15 U.S.C. § 2310, the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, and breach of contract. Over the course of this litigation we have dismissed the federal law claims originally pled by plaintiff, and his third amended complaint has been whittled down to two state law claims: violation of the Illinois Consumer Fraud Act (ICFA) and breach of contract.[4] Plaintiff has filed a

motion to certify a class action with respect to the ICFA claim. In his motion plaintiff seeks to represent a class of all persons who purchased an ESP at Highland on or after January 9, 1994 (3[d] am.cplt., ¶ 31). He claims that this class of individuals was deceived by Ford and is entitled to rescission of their ESPs and return of all monies paid for those contracts, as well as compensatory and punitive damages and attorney fees.

### DISCUSSION

■ Rule 23 of the Federal Rules of Civil Procedure governs our analysis of plaintiff's motion for class certification. *See Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). Rule 23(a) requires that 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law and fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. The burden is on the party seeking class certification to establish each of these elements. *See Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir.1984). If each of the prerequisites of Rule 23(a) are met the moving party also bears the burden of establishing one of the elements contained in Rule 23(b). *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Here, plaintiff seeks class certification under Rule 23(b)(3); therefore, he must demonstrate that common questions of law and fact predominate over individual issues and that the class mechanism is superior to other methods of adjudicating the controversy.

■ When deciding a motion for class certification we deem as true all of the substantive allegations of the complaint and do not consider the merits of the action. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156,

---

**3.** These limitations rarely impact repair claims of ESP policyholders. According to Link, Highland denies only approximately five ESP repair claims per year, and plaintiff is the only person in the last 12 years at Highland whose ESP claim was denied because the cost of repair exceeded the N.A.D.A. value of his car (Link aff., ¶ 5).

**4.** We retain supplemental jurisdiction over these two surviving claims pursuant to 28 U.S.C. § 1367(c), and may also have diversity jurisdiction under 28 U.S.C. § 1332.

178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Toney v. Rosewood Care Center, Inc. of Joliet,* 1999 WL 199249,*2 (N.D.Ill. Mar. 31, 1999); *Dhamer v. Bristol–Myers Squibb Co.,* 183 F.R.D. 520, 529–30 (N.D.Ill.1998). Evidence relevant to class certification may be intertwined with the merits, however, and our resolution of plaintiff's motion may involve some consideration of the factual and legal issues underlying his claim. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 & n. 12, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *Eggleston v. Chicago Journeymen Plumbers' Local Union,* 657 F.2d 890, 895 (7th Cir. 1981); *Toney,* 1999 WL 199249, at * 2. We have broad discretion in our determination of whether a class should be certified. *See Retired Chicago Police,* 7 F.3d at 596. Failure on the part of the movant to satisfy any one of the requirements of Rule 23(a) or (b) precludes class certification. *See Patterson v. General Motors Corp.,* 631 F.2d 476, 480 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

Ford argues that because common questions of law and fact do not predominate this lawsuit and a class action is not the superior method of fair adjudication here, plaintiff's motion runs afoul of Rule 23(b)(3). Furthermore, Ford asserts that plaintiff cannot satisfy the typicality and adequacy elements of Rule 23(a). Ford's arguments regarding the predominance and typicality requirements are dispositive of plaintiff's motion and we discuss these two factors below.

### I. *Predominance*

 Rule 23(b)(3)'s predominance requirement is the chief obstacle to class certification. *See Amchem,* 521 U.S. at 615, 117 S.Ct. 2231; 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1777, p. 518 (1986). Plaintiff bears the burden of establishing that common issues of law and fact are central to all of his claims. *See Dhamer,* 183

F.R.D. at 529. Moreover, "[c]ertification under Rule 23(b)(3) is improper where liability determinations are both individual and fact-intensive." *Hickey v. Great Western Mortgage Corp.,* 1995 WL 121534, *4 (N.D.Ill. Mar. 17, 1995). The nature of plaintiff's ICFA claim and the broad definition of the class he seeks to represent raise critical issues with respect to whether class treatment is appropriate under Rule 23(b)(3).

Plaintiff brings the ICFA claim against Ford on an agency theory.[5] Therefore, as we have held in previous opinions, all phases of the alleged deception are relevant to our analysis. *See Williams,* 990 F.Supp. at 554. Plaintiff suggests in his brief that under his new class theory, which concentrates on the lack of disclosures made to ESP customers at the time of purchase rather than the imposition of the inspection fee at the time of repair, events occurring after the purchase of the ESP are irrelevant. In his motion for class certification, however, plaintiff argues that the deceptive demand for payment of an inspection fee at the time of repair is an issue common to all class members (plf.mo., ¶ 5). Plaintiff's agency theory also relies on conduct occurring after the sale of the ESP (plf.reply brief at 10). Thus, in order to assess plaintiff's motion we cannot constrict our review solely to the time of purchase. Furthermore, as we have previously held, we will not subscribe to an "artificial division between acts taken at the time of sale and acts taken at the time of service." *Williams,* 990 F.Supp. at 554. All of the allegedly deceptive conduct is relevant to our determination of whether common issues predominate this lawsuit.

 In order to establish a violation of the ICFA, plaintiff must show that 1) Ford engaged in a deceptive act or practice; 2) Ford intended that plaintiff rely on the deception; 3) the deception occurred in the course of conduct involving trade and commerce; and 4) the consumer suffered actual

---

**5.** Until recently plaintiff relied on a theory of apparent authority as the basis of the agency relationship between Ford and Highland, and could not state a claim under an actual authority theory. *Williams,* 990 F.Supp. at 555. In his third amended complaint, however, plaintiff has raised additional allegations that may well establish an agency relationship based on actual authority. While the third amended complaint has not been tested by a motion to dismiss, we need not decide the nature of plaintiff's agency theory in order to resolve his motion for class certification.

damage. *See* 815 ILCS 505/2; 815 ILCS 505/10a(a). Although plaintiff need not prove actual reliance, he must show that the fraud proximately caused his injury. *See Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 593 (1996). Plaintiff argues that the only individual issues that exist with respect to the ICFA claim are the identity of the class members, computation of their damages, and their reliance on the alleged deception (plf.mo., ¶ 6; plf.reply brief at 13). The existence of these issues, plaintiff contends, cannot defeat class certification. *See Abt v. Mazda American Credit*, 1999 WL 350738, *2 (N.D.Ill. May 19, 1999); *Heastie v. Community Bank of Greater Peoria*, 690 F.Supp. 716, 719–20 (N.D.Ill.1988). However, as Ford points out, numerous individual issues permeate plaintiff's consumer fraud claim, making it inappropriate for class treatment.

Examples of individual issues are readily apparent. First, individual inquiries may be required as to whether a policyholder knew of the inspection fee and trade-in value limitations prior to purchasing the ESP. The alleged deception caused such policyholders no harm. Second, the evidence has revealed that only approximately five ESP policyholders are denied repair coverage each year at Highland. Individual issues exist with respect to why the claims of these policyholders were denied. Some policyholders may have presented a non-covered repair, others may have failed to maintain their vehicle, and still others may have exceeded the time or mileage limitations of their ESP. These policyholders knew when they purchased their ESPs that repair claims could be rejected on these grounds and therefore may not have been deceived by Ford. Third, the ESP contract contains a cancellation clause that permits rescission by the policyholder within sixty days of purchasing the policy (3 ᵈ am. cplt.,exh. E). Individual inquiries may be necessary to determine whether any class members exercised that clause, for they also suffered no deception. Finally, many policyholders may never have sought repair coverage under the ESP and their policies may now be expired, and others may have sought and received coverage to their complete satisfaction. Again, these policyholders may not have suffered from any alleged deception.

■ Many of these individual issues are relevant to the element of proximate cause. Individual issues of causation, like issues of reliance and damages, often plague class actions brought under the ICFA. *See Johnson v. Aronson Furniture Co.*, 1998 WL 641342, *7 (N.D.Ill. Sept. 11, 1998). Denial of class certification is appropriate where individual issues of causation predominate an ICFA claim. *See Fisher v. Bristol–Myers Squibb Co.*, 181 F.R.D. 365, 372 (N.D.Ill.1998). In some cases, however, courts in this district have opted for a bifurcated approach, certifying common issues regarding the deception but declining to certify issues of causation, reliance and damages. *See, e.g., Hoffman v. Grossinger Motor Corp.*, 1999 WL 184179, *4 (N.D.Ill. Mar. 29, 1999); *Johnson*, 1998 WL 641342, at *7; *Lindsey v. Ed Johnson Oldsmobile, Inc.*, 1997 WL 269627, at *4 (N.D.Ill. May 14, 1997). While that alternate route seems appealing, the predominance of individual issues here militates against applying that mechanism in this case. This is not a garden-variety consumer fraud case. In addition to the individual inquires inherent in plaintiff's ICFA claim, we will also need to address individual issues with respect to plaintiff's agency theory. *See Hickey*, 1995 WL 121534, at *6–8. In light of the many individual issues that exist and the fact-intensive, individualized hearings that are in the offing, few efficiencies will be gained from class adjudication. We cannot conclude that plaintiff has met his burden of establishing that common issues predominate this lawsuit.

II. *Typicality*

■ Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members" and is "based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied*, 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993). The burden of establishing typicality remains on the plaintiff.

**586**

See Trotter, 748 F.2d at 1184. "If proof of [plaintiff's] claims would not necessarily prove all of the proposed class members' claims," he fails the typicality prong of Rule 23(a). *Ruiz v. Stewart Associates, Inc.*, 167 F.R.D. 402, 405 (N.D.Ill.1996) (internal quotations and citations omitted).

 Plaintiff seeks to represent a class of all ESP policyholders who purchased their policies at Highland during the limitations period (3 d am.cplt., ¶ 31). He claims that this class was harmed by Ford's deceptive disclosures. However, at his deposition, and in his third amended complaint, plaintiff makes clear that he has suffered an injury that is significantly different than the harm allegedly suffered by the class. He alleges that he was charged an inspection fee by Highland and that his repair claim was denied because Ford determined that the damage to his engine exceeded the value of his vehicle. As discovery has revealed, few other class members have suffered similar damages. Indeed, only a handful of ESP policyholders have been denied a repair claim and plaintiff is the only person in the last 12 years at Highland that was denied a repair claim because the cost of his damages exceeded the value of his car (Link aff., ¶ 5). The vast majority of ESP policyholders cannot allege the sort of injury plaintiff complains of. Instead, nearly every other class member will have to argue that Ford's deceptive conduct stripped them of the benefit of their bargain. Plaintiff does not share in the need to pursue this theory of recovery. Therefore, he is not typical of the class.

"Courts faced with an overbroad class definition may deny certification for want of typicality." *McGarvey v. Citibank (South Dakota) N.A.*, 1995 WL 404866, at *4 (N.D.Ill. July 5, 1995). While plaintiff's claims and defenses may be typical of the few ESP policy-holders who were charged an inspection fee, it is not typical of the broad class he seeks to represent. Proof of plaintiff's ICFA claim will not prove the claims of all of the putative class members. *See Ruiz*, 167 F.R.D. at 405. Plaintiff's situation is not typical, it is unique. Class certification is inappropriate.

**CONCLUSION**

For the reasons set forth above, plaintiff's motion for class certification is denied.